UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LOUIS W.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.:  20cv2277-LL(MSB) <br><br> **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW OF THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** <br> **[ECF NO. 20]** |

This Report and Recommendation is submitted to the Honorable Linda Lopez, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On November 23, 2020, Plaintiff filed a Complaint, (Compl., ECF No. 1), and on November 27, 2020, an Amended Complaint, the operative pleading in this case, pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner

---

[1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

1  of Social Security denying his application for a period of disability, disability insurance

2  benefits, and supplemental security income, (Am. Compl., ECF No. 7).

3       Now pending before the Court is the parties' "Joint Motion for Judicial Review of

4  the Final Decision of the Commissioner of Social Security" ("Joint Motion").  (J. Mot., ECF

5  No. 20 ("J. Mot.").)  For the reasons set forth below, the Court **RECOMMENDS** that the

6  Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the

7  decision of the Commissioner and remanding this matter for further administrative

8  proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

9                          **I.  PROCEDURAL BACKGROUND**

10      On April 27, 2017, Plaintiff filed an application for a period of disability and

11  disability insurance benefits under Title II of the Social Security Act, alleging disability

12  beginning November 1, 2013.  (Certified Admin. R., 15, ECF No. 14-2 ("AR").)  Plaintiff

13  also filed an application for supplemental security income under Title XVI on April 27,

14  2017.  (Id.)  After his application was denied initially and upon reconsideration, (id. at

15  130–35, 138–43), Plaintiff requested an administrative hearing before an administrative

16  law judge ("ALJ"), (id. at 144–46).  An administrative hearing was held on September 23,

17  2019.  (Id. at 40–55.)  Plaintiff appeared at the hearing with counsel, and testimony was

18  taken from him and a vocational expert ("VE").  (Id.)

19      As reflected in his October 8, 2019, hearing decision, the ALJ found that Plaintiff

20  had not been under a disability, as defined in the Social Security Act, from November 1,

21  2013, through the date of the decision.  (Id. at 25.)  The ALJ's decision became the final

22  decision of the Commissioner on September 18, 2020, when the Appeals Council denied

23  Plaintiff's request for review.  (Id. at 1–6.)  This timely civil action followed.

24                      **II.  SUMMARY OF THE ALJ'S FINDINGS**

25      In rendering his decision, the ALJ followed the Commissioner's five-step

26  sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found

27  that Plaintiff had not engaged in substantial gainful activity since November 1, 2013, the

28  alleged onset date.  (AR at 17.)  At step two, the ALJ found that Plaintiff had the

following severe impairments: degenerative disc disease of the lumbar and thoracic spine, degenerative changes of the cervical spine with residuals of surgery, and mild osteoarthritis of the bilateral shoulders.  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 19.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to lift and carry 20 pounds occasionally, ten pounds frequently; can stand and/or walk for six hours out of eight hours, sit for six hours; occasionally climb stairs and ramps, never climb ropes, ladders, scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally reach overhead bilaterally; and avoid concentrated exposure to extreme cold, unprotected heights, and moving and dangerous machinery.

(Id. at 19–20.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform any of his past relevant work.  (Id. at 23, 51–52.)  The ALJ then proceeded to step five of the sequential evaluation process.  Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as cleaner, assembler, and material distributor, the ALJ found that Plaintiff was not disabled.  (Id. at 24–25, 52.)

### III.  DISPUTED ISSUES

As reflected in the parties' Joint Motion, Plaintiff is raising the following issues as the grounds for reversal and remand:

1.      Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction;

1      2.     Whether the ALJ properly evaluated whether Plaintiff's cervical impairment

2  met or medically equaled Listing 1.04(A);

3      3.     Whether the ALJ fully and fairly developed the record; and

4      4.     Whether the ALJ resolved an apparent inconsistency between the VE's

5  testimony and the Dictionary of Occupational Titles ("DOT").  (J. Mot. at 2–3.)

6                  **IV.  STANDARD OF REVIEW**

7      Section 405(g) of the Social Security Act allows unsuccessful applicants to seek

8  judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of

9  judicial review is limited, and the denial of benefits will not be disturbed if it is

10  supported by substantial evidence in the record and contains no legal error.  Id.; Buck v.

11  Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Molina v. Astrue, 674 F.3d 1104,

12  1110 (9th Cir. 2012) (citation omitted)).

13      "Substantial evidence means more than a mere scintilla but less than a

14  preponderance.  It means such relevant evidence as a reasonable mind might accept as

15  adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017)

16  (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.

17  1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where the evidence is

18  susceptible to more than one rational interpretation, the ALJ's decision must be upheld.

19  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to

20  the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v.

21  Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that

22  substantial evidence supports the ALJ's conclusions, the court must set aside the

23  decision if the ALJ failed to apply the proper legal standards in weighing the evidence

24  and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190,

25  1193 (9th Cir. 2004).

26  / / /

27  / / /

28  / / /

# V.  DISCUSSION

## A.    The ALJ Did Not Provide Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Allegations of Pain and Physical Dysfunction

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting his allegations of pain and physical dysfunction.  (J. Mot. at 3–8, 13–14.)  Plaintiff asserts that the ALJ recognized that Plaintiff had severe spinal impairments, and the ALJ was required to provide specific, clear, and convincing reasons for discrediting Plaintiff's alleged symptoms.  (Id. at 3–4.)  Plaintiff maintains that the ALJ's general findings are insufficient, and the ALJ failed to identify what testimony is not credible and what medical evidence undermines Plaintiff's alleged symptoms.  (Id. at 4, 13–14.)  Plaintiff contends that the ALJ's failure to identify legally sufficient rationale for discounting his allegations of neck and back pain constituted legal error warranting remand.  (Id. at 7–8.)

The Commissioner asserts that the ALJ reasonably weighed Plaintiff's allegations of pain and physical dysfunction against the objective medical evidence in the record.  (Id. at 9–13.)  The Commissioner alleges that substantial evidence supports the ALJ's assessment that Plaintiff could perform a range of light work, and the ALJ identified contradictions between Plaintiff's testimony and the medical record, and found that Plaintiff's back pain improved with physical therapy and conservative treatment.  (Id. at 9–12).  Further, the Commissioner asserts that the ALJ pointed to multiple examinations and specific exhibits in the record to support his decision.  (Id. at 11–12.)  Therefore, the Commissioner maintains that the ALJ did not arbitrarily discredit Plaintiff's testimony, and the ALJ's decision is free of harmful error.  (Id. at 12–13.)

### 1.    Applicable law

When evaluating claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis.  See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996), superseded, in part, on other grounds by 20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 16-3p,[2] 2016 WL

1119029 (Mar. 16, 2016).  First, the ALJ must determine whether there is objective

medical evidence of an underlying impairment that "could reasonably be expected to

produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678

(9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  The

claimant is not required to show that an underlying impairment could reasonably be

expected to cause the severity of the pain alleged, but only that it could have reasonably

caused some degree of the pain.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)

(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the first step has been satisfied and there is no evidence of malingering,

then the ALJ may reject the claimant's statements about the severity of his symptoms

"only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d

at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is

the most demanding required in Social Security cases." Revels, 874 F.3d at 648 (quoting

Garrison, 759 F.3d at 1014–15).  General findings are insufficient, and the ALJ must

identify which specific pain and symptom statements are being discounted and what

evidence undermines those claims.  See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir.

2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014));

Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  An ALJ's failure to identify specific

statements and explain why they are not credible precludes meaningful review, because

the reviewing court cannot determine if the ALJ's decision was supported by substantial

evidence, and constitutes reversible error.  Brown-Hunter v. Colvin, 806 F.3d 487, 489

(9th Cir. 2015); see also SSR 16-3p.

---

[2] SSR 16-3p, which went into effect before the ALJ's decision, rescinded and superseded SSR 96-7p and the former "credibility" language.  The Ninth Circuit noted that the SSR 16-3p "makes clear what [the] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p).

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.  Factors the ALJ may consider, in addition to objective medical evidence, include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.  The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence.  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

**2.      Plaintiff's testimony during the administrative hearing and medical records**

**a.      Relevant testimony during Plaintiff's administrative hearing**

Plaintiff testified that he stopped working as a labor worker because his "back went out on [him]."  (AR at 44.)  Plaintiff stated that he experiences pain in his back, neck, and shoulders, and "can't hardly move sometimes" due to pain.  (Id. at 44–45.) Plaintiff alleged that he is physically limited to standing for thirty minutes, sitting for thirty minutes, walking a block and a half, and lifting five to ten pounds.  (Id. at 47–49.) Plaintiff stated that he cannot perform housework or yardwork, does not shop, and accompanies his girlfriend to a store only if the store has a cart he could ride.  (Id. at 50.)

Plaintiff used a cane during his administrative hearing.  (Id. at 46.)  He advised the ALJ that he was not prescribed the cane.  (Id.)  Plaintiff explained that he uses the cane to prevent falls because he fell in the past.  (Id.)  Plaintiff testified that he takes Norcos, Gabapentin, muscle relaxers, high blood pressure medications, and three or four

1  additional pain medications.  (Id. at 47.)  Plaintiff also stated that he had surgery on his

2  neck between six months and one year before the administrative hearing.[3]  (Id. at 44.)

3  **b.   Function Report dated September 11, 2017**

4  Plaintiff wrote in his Function Report that he is "unable to stoop, bend, stand, or

5  lift legs and arms," experiences "tingling in finger, pain constantly in back, neck,

6  shoulders," and cannot sleep due to "constant pain."  (Id. at 292–93.)  Further, Plaintiff

7  reported that his injuries affect lifting, squatting, bending, standing, reaching, walking,

8  sitting, kneeling, stair climbing, completing tasks, concentration, following instructions,

9  using hands, and getting along with others.  (Id. at 297.)  He cannot lift ten pounds or

10  walk more than half a block before stiffening up in pain.  (Id.)  He uses a cane and a

11  prescribed back brace.  (Id. at 298.)  He does not require help with personal care, does

12  not cook because of pain, and his girlfriend prepares his meals.  (Id. at 293–94.)  Plaintiff

13  can keep his living area clean, goes outside, drives, but does not shop.  (Id. at 294–95.)

14  **c.   Third-Party Function Report dated September 11, 2017**

15  Plaintiff's fiancé stated in her Third-Party Function Report that Plaintiff "can't

16  stand, bend, squat, or walk for long periods," and is "always in pain."  (Id. at 279.)  She

17  wrote that Plaintiff's sleep is impacted because he "can't get comfortable" due to back

18  neck, leg, and shoulder pain.  (Id. at 280.)  She also stated that Plaintiff's conditions

19  affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, memory,

20  completing tasks, concentration, using hands, and getting along with others.  (Id. at

21  284.)  Further, she wrote that Plaintiff can only walk a half a block and lift ten pounds,

22  uses a prescribed back brace, and does not require help with personal care.  (Id. at 280,

23  284–85.)  Plaintiff does not cook, eats "sandwiches, frozen, fast foods," and can do

24

25

26

27  [3]  During the hearing, the ALJ determined that Plaintiff's counsel did not provide records of this surgery.  (Id. at 45.)

28

1  laundry and ironing as long as he does not have to lift items.  (Id. at 281.)  Plaintiff goes

2  outside daily, can drive, and shops in stores where he can ride a scooter.  (Id. at 282.)

3                    **d.    Medical records**

4        On November 15, 2013, Plaintiff injured his back at work.  (Id. at 346.)  Plaintiff's

5  pain was so severe that he was admitted to the emergency room, and he was given pain

6  medications, a referral to physical therapy, and a back brace.  (Id.)

7        Plaintiff's treating physician, Dr. Adsit, cared for Plaintiff between December 2013

8  and May 2014.  (Id. at 346–56.)  At an initial orthopedic evaluation, Plaintiff reported

9  "ongoing pain in his lower back area that does not radiate to his legs," "decreased range

10  of motion of his lower back area," and ability to "sit for approximately one hour, stand

11  for a couple of hours, and walk for a couple of blocks."  (Id. at 347.)  Plaintiff stated that

12  his pain improved with medication.  (Id.)  Dr. Adsit diagnosed Plaintiff with lumbosacral

13  sprain and strain.  (Id. at 348.)  Dr. Adsit reported, in relevant part, that Plaintiff:

14        walks with an upright posture, and an alternating gait.  He is able to
15        complete heel walk and toe walk with each leg individually. . . .  He has
          normal strength to manually resisted strength testing in all major motor
16        groups of the lower extremities.  Supine straight leg raising is 40/50, limited
17        by pain on the right. . . .  He denies increased pain with axial compression
          applied to his [occiput], or with simulated rotation of his lumbar spine.

18

19  (Id. at 347.)  Dr. Adsit recommended physical therapy, pain medication, and muscle

20  relaxants.  (Id. at 348.)  He concluded that Plaintiff could "resume modified duty of no

21  prolonged standing or walking, no repetitive bending, stooping, squatting, no lifting,

22  pushing, or pulling more than 5 pounds, and use of back support."  (Id.)  Dr. Adsit

23  further opined that "[i]f modified duty is not available, [Plaintiff] would remain

24  temporarily totally disabled."  (Id.)

25        Over the course of several examinations, Dr. Adsit noted that Plaintiff had a

26  normal gait, (id. at 350–56); normal heel and toe walk, (id. at 351–56); normal posture,

27  (id. at 350, 353); and good strength, (id. at 351–56).  Plaintiff alleged reduced back pain

28  due to physical therapy, (id. at 354–56), and requested additional physical therapy

1   sessions, (id. at 350, 353–54).  Dr. Adsit repeatedly found that Plaintiff had the following

2   limitations: "No prolonged standing and walking.  No repetitive bending, stooping, [or]

3   squatting.  Limited push [and] pull to 25 pounds.  Use of back support."  (Id. at 350, 355–

4   56.)  At times, Plaintiff complained of continued pain in his back, (id. at 353), and an

5   occasional "flare up," (id. at 351).  Dr. Adsit prescribed Norco, Naproxen, and Flexeril.

6   (Id. at 353.)

7        From December 2013 until April 2014, Plaintiff underwent physical therapy for his

8   back injury.  (Id. at 357–419.)  On December 9, 2013, Plaintiff reported that his pain level

9   at worst was an 8/10, and his pain level at best was a 1/10.  (Id. at 388.)  Plaintiff's range

10  of motion was limited to fifty percent because of pain.  (Id. at 389.)  Throughout the

11  course of treatment, Plaintiff indicated improvement, (id. at 357, 359, 360, 363, 371,

12  392), and decreased pain, (id. at 359 (pain is 4-5/10), 364 (pain is 4-5/10 when

13  standing), 365, 374 (pain varies from 3-5/10), 375, 381 (pain is 2-3/10), 383 (pain is 2-

14  3/10), 387, 394, 398 (pain is 5-6/10 with pain medications), 408, 412, 418 (pain is 4-

15  5/10)).  However, at times, Plaintiff reported soreness, (id. at 371, 374); muscle fatigue,

16  (id. at 396); stiffness, (id. at 377, 385, 406, 414); and increased pain resulting from

17  treatment, (id. at 369, 401 (8/10 pain after last session), 402, 410, 416).  Plaintiff's

18  physical therapists also noted improvement with treatment, (id. at 357, 359–60, 369,

19  374–75, 381, 387, 398, 408); decreased pain, (id. at 357, 360, 362, 364, 374, 383);

20  increased flexibility, (id. at 359, 362, 364, 374, 381, 404); increased range of motion, (id.

21  at 377, 412); increased mobility, (id. at 381); increased function, (id. at 374); and

22  increased strength, (id. at 359, 367, 374, 377, 394, 399).  On April 29, 2014, at Plaintiff's

23  last physical therapy session, Plaintiff reported pain level of 5/10, and stated that his

24  pain level at worst was an 8/10.  (Id. at 379.)

25       On May 12, 2014, an MRI of Plaintiff's lumbar spine revealed multilevel

26  degenerative disc disease with broad-based disc bulge at L1-L2, grade 1

27  spondylolisthesis at L5-S1, and broad-based disc bulge with moderate bilaterally

28  neuroforaminal narrowing at L4-5.  (Id. 420–21.)  On May 14, 2014, after reviewing the

results of the MRI of Plaintiff's lumbar spine, Dr. Adsit determined that Plaintiff was "[t]emporarily totally disabled." (<u>Id.</u> at 352.)  Dr. Adsit referred Plaintiff to a spine surgeon.  (<u>Id.</u>)

On May 29, 2014, Dr. Nelson, a state agency examining physician, saw Plaintiff for an orthopedic spinal consultation.  (<u>Id.</u> at 422–27.)  Plaintiff alleged constant pain in lower back, tingling in his hands, stiffness in his neck, inability to stand or sit for long periods of time or to lift weight, and difficulty bending down.  (<u>Id.</u> at 429–31.)  His pain was an 8/10.  (<u>Id.</u> at 423, 430.)  An x-ray of Plaintiff's lumbar spine revealed an isthmic spondylolisthesis at the L5-S1 level grade 1, narrowed L5-S1 disc space, and anterior osteophytes and disc space narrowing at the L2-L3 level.  (<u>Id.</u> at 428.)  Dr. Nelson noted that Plaintiff had normal gait, motor strength, sensation in the bilateral lower extremities, and range of motion.  (<u>Id.</u> at 424.)  Dr. Nelson diagnosed Plaintiff with lumbar sprain and strain, as well as preexisting isthmic spondylolisthesis, which likely became symptomatic after back injury.  (<u>Id.</u> at 425.)  Dr. Nelson found that Plaintiff was "capable of some work in the idealized universe" with lifting restricted to ten to fifteen pounds, no prolonged standing or sitting, and no bending, lifting, or twisting.  (<u>Id.</u> at 426.)

On August 6, 2014, Dr. Korsh conducted an initial evaluation of Plaintiff for orthopedic spine surgery.  (<u>Id.</u> at 456–61.)  Plaintiff reported "debilitating" back pain that affected his ability to sit, stand, walk, and bend, as well as perform daily activities.  (<u>Id.</u> at 456.)  Dr. Korsh noted a "20% loss of range of motion of the lumbar spine."  (<u>Id.</u> at 457.)  Dr. Korsh diagnosed Plaintiff with spondylolisthesis and collapse of L5-S1 with neurological deficits.  (<u>Id.</u> at 462.)  Based on Plaintiff's "significant pain" and lack of success of nonoperative care, including medications, physical therapy, and injections, Dr. Korsh concluded that "surgical intervention is indicated and warranted."  (<u>Id.</u> at 459.)  Dr. Korsh found that Plaintiff was "temporarily totally disabled pending surgical intervention."  (<u>Id.</u> at 460.)

1    On November 16, 2015, Dr. Sabourin, a state agency examining physician,

2    conducted an orthopedic consultative examination of Plaintiff.  (Id. at 465–69.)  Plaintiff

3    reported that he suffers back pain that radiates into his hands and legs, impacting his

4    ability to sit, stand, walk, bend, and lift.  (Id. at 465.)  Dr. Sabourin noted that Plaintiff

5    "sits and stands with normal posture," "rises from a chair without difficulty," his "gait is

6    normal," and he is "able to toe and heel walk."  (Id. at 466.)  Plaintiff's range of motion

7    of the cervical spine and lumbar spine, and motor strength were normal.  (Id. at 466–

8    68.)  Dr. Sabourin diagnosed Plaintiff with lumbar strain and sprain, and acknowledged

9    Plaintiff's prior diagnosis of spondylolisthesis.  (Id. at 468.)  Dr. Sabourin wrote that

10   Plaintiff was "like a lot of people with spondylolisthesis, he appears to be living with it

11   fairly well, but will get sciatic severe pain syndrome."  (Id. at 468–69.)  Dr. Sabourin

12   made the following findings:

13        [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds
14        frequently.  He could stand and walk up to six hours of an eight-hour
          workday and sit for six hours of an eight-hour workday.  Push and pull
15        limitations would be 50 pounds occasionally and 2 pounds frequently.  In a
          working situation, he could climb, stoop, kneel and crouch only
16        occasionally.  He has no manipulative limitations.  He has no need for
17        assistive devices to ambulate.

18

19   (Id. at 469.)

20        On July 13, 2016, Dr. Korsh's Progress Report indicated that Plaintiff had back

21   pain, but was reluctant to undergo surgery.  (Id. at 462.)  Dr. Korsh noted normal gait,

22   but difficult heel and toe walk, and a twenty-five percent reduction in range of motion

23   of the spine.  (Id.)

24        On June 23, 2017, Plaintiff reported pain resulting from his back injury to his

25   treating physicians at San Ysidro Health Center.  (Id. at 500.)  Over several visits, Plaintiff

26   reported back pain, (id. at 500, 513, 547, 572, 577); joint pain, (id. at 500); neck pain, (id.

27   at 513, 547, 551, 556, 558, 561, 563, 567, 572, 577, 581, 586, 620); joint swelling, (id. at

28   500); extremity numbness, (id. at 513, 542, 547, 553, 558, 563, 567, 572, 576, 586, 591,

20cv2277-LL(MSB)

620); extremity weakness, (id. at 513, 547, 553, 558, 586); and muscle weakness, (id. at 500, 513, 572, 591).  Plaintiff's reported neck pain ranged from moderate, (id. at 551), to severe, radiating down both arms, (id. at 546 (pain is 9-10/10), 556, 661).  Plaintiff's pain in his cervical spine ranged from mild, (id. at 513), to moderate, (id. at 558, 563, 568), to severe, (id. at 620).  The physicians found that Plaintiff had normal strength in his lower extremities, lumbar spine, motion and stability, balance and gait, decreased bilateral hand strength, and bilateral grip weakness.  (Id. at 500–01, 548, 591.)  Plaintiff was referred to a pain management specialist.  (Id. at 501.)  The pain specialist referred Plaintiff to a neurosurgeon.  (Id. at 512.)

On September 20, 2017, an MRI of Plaintiff's cervical spine showed multilevel degenerative disc disease with spinal cord compression and "multilevel neural foraminal narrowing." (Id. at 516–17.)  An MRI of Plaintiff's lumbar spine revealed multilevel degenerative disc disease and possible compression of the right L5 nerve root.  (Id. at 518–19.)

On January 14, 2018, Dr. Cross, a state agency psychologist, conducted a psychological consultative examination of Plaintiff.  (Id. at 526–34.)  Plaintiff reported that he is able to "dress and bathe himself, do the dishes, pick up after himself, sweep with a broom, vacuum, fold laundry, [and] cook." (Id. at 530.)  Dr. Cross diagnosed Plaintiff with major depressive disorder with psychotic features and generalized anxiety disorder.  (Id. at 531.)  Dr. Cross noted, in relevant part, that Plaintiff's "[g]ait was slow (he walked hunched over and appeared to be in pain)." (Id. at 530.)  Additionally, Dr. Cross wrote that Plaintiff's "complaints were somewhat consistent with presentation," he appeared "somewhat genuine and truthful," and "[t]here was some evidence of exaggeration." (Id. at 528, 530.)

20cv2277-LL(MSB)

1    In April 2018, Plaintiff had spinal stenosis surgery.[4]  (Id. at 566.)  The hospital

2  advised Plaintiff to undergo another surgery, but he declined.  (Id.)  Post-surgery,

3  Plaintiff indicated that he was in severe pain.  (Id. at 566, 568, 570, 575, 618 (pain is 5-

4  8/10)).  Two months after the surgery, Plaintiff reported that he was unable to perform

5  daily activities or sleep without pain, his pain was a 10/10 without medication, and a 3-

6  4/10 with medication.  (Id. at 578.)

7    In July 2019, Plaintiff saw a neurosurgeon for his back pain, but declined further

8  surgery.  (Id. at 618.)  The neurosurgeon noted the following regarding Plaintiff's back

9  pain: "The symptoms are reported as being severe.  The symptoms occur daily.

10  [Plaintiff] states the symptoms are chronic."  (Id.)

11    On August 19, 2019, a radiographic scan of Plaintiff's thoracic spine showed mild

12  vertebral osteophytosis and mild multilevel disc space narrowing.  (Id. at 623.)  A

13  radiographic scan of Plaintiff's bilateral shoulder showed mild and stable osteoarthritic

14  changes involving the acromioclavicular and glenohumeral joints.  (Id. at 614.)  A

15  computed radiographic scan of Plaintiff's lumbar spine showed slight progression of

16  grade one spondylolisthesis of L5 on S1, moderate vertebral osteophytosis at L2-3 and

17  L5-S1, marked disc space narrowing at L5-S1, and moderate disc space narrowing at L2-

18  3.  (Id. at 625.)

19    **3.    Analysis**

20    Neither party contests the ALJ's determination that Plaintiff has the following

21  "severe impairments: degenerative disc disease of the lumbar and thoracic spine,

22  degenerative changes of the cervical spine with residuals of surgery, and mild

23  osteoarthritis of the bilateral shoulders."  (See id. at 17; see also J. Mot.)  Because the

24  ALJ determined that Plaintiff's "medically determinable impairments could reasonably

25

26  ────────────────

27  [4]  The records of Plaintiff's spinal stenosis surgery are not included in the Administrative Record.  This
    appears to be the same surgery Plaintiff referenced at the administrative hearing, stating that the
28  surgery had occurred between six months and a year before the hearing.  (See AR at 44.)

be expected to cause some of the alleged symptoms," a finding that is not contested by the parties, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  (See id. at 20; J. Mot. at 3–14.)  Further, neither party alleges that the ALJ found that Plaintiff was malingering.  (See J. Mot.)  As a result, the Court must determine whether the ALJ identified which of Plaintiff's statements regarding pain and physical limitations he discredited, and whether the ALJ provided specific, clear, and convincing reasons for doing so.  See Brown-Hunter, 806 F.3d at 489; Trevizo, 871 F.3d at 678; Garrison, 759 F.3d at 1014–15.

In his written opinion, the ALJ summarized Plaintiff's pain and physical dysfunction reported in the Function Report in a single paragraph:

> The claimant, age 54, alleges that he cannot work due to physical conditions (Exhibit 2E).  He reported his hands got numb and he lost his balance (Exhibit 8E).  In his adult function report, he reported that he had pain in the back, neck, and shoulders so that he could not stoop, bend, stand or lift his legs and arms.  He reported tingling in his finger as well.

(AR at 20.)

Next, the ALJ addressed the Third-Party Function Report completed by Plaintiff's fiancé, where she reported that Plaintiff could not stand, bend, squat or walk for long periods, and that Plaintiff "was always in pain."  (Id.)  The ALJ generally stated that Plaintiff's fiancé's report was "not supported or consistent with the record as a whole," and not objective given her relation to Plaintiff.  (Id.)

The ALJ then explained his two-step analysis of Plaintiff's symptom testimony using common, boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Id. at 20–21.)

The ALJ then summarized Plaintiff's medical records, and concluded that "as for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective medical evidence generally does not support the alleged loss of function." (Id. at 22.) "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter, 806 F.3d at 489. "The ALJ's use of [the] boilerplate language—without identifying which of Plaintiff's statements the ALJ found were not credible and why—is insufficient for th[e] Court to determine whether the ALJ's decision was supported by substantial evidence." Zimmerman v. Saul, 2020 WL 1686279, at *7 (S.D. Cal. Apr. 6, 2020) (citing Brown-Hunter, 806 F.3d at 491, 493 (finding that the ALJ erred in making a conclusory statement that plaintiff's "statements concerning the intensity, persistence and limiting effect of [plaintiff's] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment," where the ALJ did not identify which of the plaintiff's statements were not credible and why); Treichler, 775 F.3d at 1102–03 (finding that the ALJ erred by making conclusory statement that "the claimant's statements concerning the intensity, persistence and limiting effects" of the plaintiff's symptoms were inconsistent with the ALJ's RFC assessment, where the ALJ did not identify what parts of the plaintiff's testimony were not credible and why)).

In this case, the ALJ did not specifically identify the "statements" or "symptoms" that were "not entirely consistent" with the medical evidence. The only references to Plaintiff's reported pain and physical dysfunction in the ALJ's opinion are Plaintiff's general allegations of back and neck pain during physical examinations. (AR at 21–22.) The ALJ's written decision does not reference Plaintiff's testimony at the administrative hearing, and does not address any of Plaintiff's allegations of pain and physical dysfunction that are allegedly inconsistent with Plaintiff's assessed RFC. (Id. at 19–23.) While it may be possible to draw inferences about what testimony is inconsistent based

1  upon the ALJ's summary of the medical evidence and the Court's extensive review of the

2  record, it is the duty of the ALJ to identify those inconsistencies.  See Lambert, 980 F.3d

3  at 1278 (quoting Brown-Hunter, 806 F.3d at 494) ("Although the inconsistencies

4  identified by the district court could be reasonable inferences drawn from the ALJ's

5  summary of the evidence, the credibility determination is exclusively the ALJ's to make,"

6  and the reviewing court is "constrained to review the reasons the ALJ asserts.").  The

7  Court therefore finds that the ALJ failed to specify which of Plaintiff's statements

8  regarding pain and physical limitations he discredited.

9        The ALJ further stated that Plaintiff's allegations could be discounted due to his

10  "improvement with physical therapy and generally conservative treatment," use of a

11  self-prescribed cane at the administrative hearing, indications of "normal balance and

12  gait" and "normal sensation and motor strength," and lack of medical opinions finding

13  disabling conditions.  (AR at 22–23.)  The ALJ concluded that despite Plaintiff's severe

14  physical impairments, the RFC limitations adequately "account[] for these conditions."

15  (Id. at 22.)  While these reasons may negate Plaintiff's testimony about the distance he

16  can walk, the length of time he can stand, or the amount of weight he can lift, as

17  discussed above, the ALJ did not specify what testimony he discounted.  Because the ALJ

18  failed to properly identify Plaintiff's statements that he found not credible and link

19  those statements to the specific evidence that allegedly undermined Plaintiff's

20  testimony, the Court cannot conduct the required review to determine whether the ALJ

21  provided clear and convincing reasons for discounting Plaintiff's allegations of pain and

22  physical defunction.  See Brown-Hunter, 806 F.3d at 489 (finding that the ALJ committed

23  legal error where "the ALJ failed to identify the testimony she found not credible, [and]

24  did not link that testimony to the particular parts of the record supporting her non-

25  credibility determination."); Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) ("the

26  ALJ did not make a specific finding linking a lack of medical records to [c]laimant's

27  testimony about the intensity of her back, neck, and head pain").

28

1    The Court notes that in the instant Joint Motion, <u>the Commissioner</u> cites

2   examples of alleged inconsistencies between Plaintiff's testimony and the medical

3   evidence, including Plaintiff's allegations that he "could only sit 30 minutes at a time,

4   stand 30 minutes at a time, and walk one and a half blocks at a time," and lift five to ten

5   pounds.  (J. Mot. at 10 (citing AR at 47–49).)  These physical limitations alleged by

6   Plaintiff are inconsistent with medical opinions in the record that found that Plaintiff can

7   lift twenty to twenty-five pounds, (<u>see</u> AR at 350, 353, 355–56, 469), and Plaintiff's

8   assessed RFC limitation to "lift and carry 20 pounds occasionally, ten pounds

9   frequently," and "stand and/or walk for six hours out of eight hours," (AR at 20).

10   However, <u>the ALJ</u> did not identify any inconsistencies in his written opinion, and it is not

11   sufficient for the Commissioner or the Court to do so.  <u>Brown-Hunter</u>, 806 F.3d at 495

12   (citation omitted) (the reviewing court "cannot substitute [its] conclusions for the ALJ's,

13   or speculate as to the grounds for the ALJ's conclusions"); <u>Garrison</u>, 759 F.3d at 1010

14   (the reviewing court "review[s] only the reasons provided by the ALJ in the disability

15   determination and may not affirm the ALJ on a ground upon which he did not rely").

16    Accordingly, the Court finds that the ALJ failed to identify which of Plaintiff's

17   statements regarding pain and physical limitations the ALJ discredited, and did not

18   provide specific, clear, and convincing reasons for doing so.  <u>See</u> <u>Brown-Hunter</u>, 806 F.3d

19   at 489; <u>id.</u> at 494 (citation omitted) ("We cannot review whether the ALJ provided

20   specific, clear, and convincing reasons for rejecting [plaintiff's] pain testimony," where,

21   inter alia, "the ALJ never identified *which* testimony she found not credible."); <u>see also</u>

22   <u>Julie R. M. v. Kijakazi</u>, Case No.: 20cv1608-GPC-MDD, 2021 WL 4993034, at *7 (S.D. Cal.

23   Oct. 26, 2021) (finding the ALJ erred by "failing to specifically identify what testimony

24   about [p]laintiff's alleged knee and hip pain he found not credible"); <u>Mangat v. Colvin</u>,

25   Case No.: 15-CV-2312-AJB-RBB, 2017 WL 1223881, at *5 (S.D. Cal. Feb. 3, 2017) (finding

26   that the ALJ erred, where the ALJ discredited plaintiff's allegation of "disability because

27   of diabetes, difficulty walking, and back pain during the relevant period," and found that

28   plaintiff's "impairments prevent[ed] him from working during the relevant period";

20cv2277-LL(MSB)

concluding that the quoted statements were not sufficiently specific).  The Court further finds that the error was not harmless "because it precludes [the Court] from conducting a meaningful review of the ALJ's reasoning."  Brown-Hunter, 806 F.3d at 489.

**B.    The ALJ Properly Evaluated Whether Plaintiff's Cervical Impairment Met or Medically Equaled Listing 1.04(A)**

Plaintiff contends that the ALJ failed to properly evaluate whether Plaintiff's cervical impairment met or medically equaled Listing 1.04(A).  (J. Mot. at 14–15.) Plaintiff argues that the ALJ summarily concluded that Plaintiff did not meet Listing 1.04(A) criteria, and did not discuss the requirements of the listing or the medical evidence to support his conclusion.  (Id. at 15.)  Plaintiff maintains that the medical evidence of record indicates that he "met most, if not all, of the requirements of Listing [1.04(A)]," and the ALJ's failure to analyze the listing in greater detail constitutes reversible error.  (Id. at 15, 17.)

The Commissioner argues that the ALJ reasonably concluded that Plaintiff's impairments did not satisfy the requirements of any listing.  (Id. at 16–17.)  The Commissioner contends that the ALJ specifically considered Listing 1.04(A) criteria and found that Plaintiff's spine disorder did not satisfy the criteria.  (Id.)  The Commissioner further argues that Plaintiff is required to identify what listing he meets or medically equals, and provide evidence to support that finding.  (Id. at 16.)  The Commissioner asserts that Plaintiff fails to establish that his cervical spine disorder satisfied Listing 1.04(A) requirements, and the ALJ did not err in his analysis of that listing.  (Id. at 17.)

**1.   Applicable law**

At step three, the ALJ considers whether a claimant has an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  See 20 C.F.R. § 404.1520(a)(4)(iii).  The mere diagnosis of a listed condition does not establish that a claimant "meets" a listed impairment.  See 20 C.F.R. § 416.925(d); Young v. Sullivan, 911 F.2d 180, 183–84 (9th Cir. 1990).  "For a claimant to show that his impairment matches

a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990); <u>see also</u> 20 C.F.R. § 416.925(d).  If a claimant has an impairment that meets or equals a listed impairment, disability is presumed, and benefits are awarded.  20 C.F.R. § 416.920(d).

Although a claimant bears the burden of proving that he has an impairment that meets or equals the criteria of a listed impairment, an ALJ is required to adequately evaluate and discuss the evidence that supports his or her conclusion before concluding that the claimant's impairments fail to meet or equal a listing.  See <u>Lewis</u>, 236 F.3d at 513; <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990).  An ALJ satisfies this requirement by adequately discussing the evidence supporting the step three determination anywhere in his decision.  <u>Kennedy v. Colvin</u>, 738 F.3d 1172, 1178 (9th Cir. 2013).  An ALJ, however, is not required "to state why a claimant failed to satisfy every different section of the listing of impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990).  Additionally, an ALJ is only required to discuss the combined effects of more than one impairment if the claimant offers a theory for how they, together, meet or medically equal a listing.  See <u>Burch</u>, 400 F.3d at 683; <u>Lewis</u>, 236 F.3d at 514; <u>Marcia</u>, 900 F.2d at 176.

**2.   Analysis**

Listing 1.04 requires a finding of disability for a claimant who: (1) has a disorder of the spine (2) which results in "compromise of a nerve root . . . or the spinal cord," and (3) is accompanied by the additional requirements set forth under subsections 1.04(A), 1.04(B), or 1.04(C).  20 C.F.R. § 404, Subpt. P, App. 1, § 1.04.[5]  Listing 1.04(A), the listing at issue, requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

---

[5]  Effective through April 1, 2021, these listings were controlling at the time of the ALJ's decision.

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id. § 1.04(A).  Because in this case Plaintiff was diagnosed with lumbosacral sprain and strain, (id. at 348, 425, 468), and isthmic spondylolisthesis, (id. at 425, 462, 468), which are impairments that involve the spine, the following criteria need to be satisfied for Plaintiff to meet Listing 1.04(A): (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by (4) sensory or reflex loss; and (5) a positive straight-leg raising test in both the (a) sitting and (b) supine position.  Further, because Listing 1.04(A) does not specify a shorter durational period, Plaintiff must establish that the impairment meeting the listing lasted or can be expected to last for a continuous twelve-month period.  See 20 C.F.R. § 416.925(c)(4).

As discussed above, at step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and thoracic spine, degenerative changes of the cervical spine with residuals of surgery, and mild osteoarthritis of the bilateral shoulders.  (AR at 17.)  At step three, the ALJ found these severe impairments did not meet or medically equal the severity of any of the listed impairments in in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Id. at 19.)  The ALJ summarized his findings as follows:

> The severity of the claimant's physical impairments, considered singly and in combination, do not meet or medically equal the criteria of any listings, including listing 1.02 and 1.04.  The record does not support the existence of any functional limitations and or diagnostic test results, which would suggest that the impairments meet or equal the criteria of any specific listing, including those noted above.  In addition, no treating or examining physician has reported findings, which either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record.

(Id.)

20cv2277-LL(MSB)

Where an ALJ determines at step three that a claimant's impairment does not meet a listing, the ALJ is required to adequately support that conclusion.  Lewis, 236 F.3d at 514.  The ALJ's reference to a lack of "functional limitations" and "diagnostic test results" does not sufficiently address the criteria of Listing 1.04(A), and specifically, which criteria Plaintiff fails to meet.  See id. at 512 ("A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet the requirements of a listing]"); see also Orcutt v. Kijakazi, No. 20-16318, 2021 WL 5414855, at *1 (9th Cir. Nov. 19, 2021) (finding that the ALJ erred at step three by rejecting Listing 1.04(A) "with a one-sentence, boilerplate dismissal when [claimant] presented with a spinal disorder"; noting that "the ALJ was required to find at least one of the criteria foreclosed where [claimant] presented with evidence that supported a Listing.").  Accordingly, because the ALJ in this case did not adequately discuss why Plaintiff's severe impairments did not meet or medically equal Listing 1.04(A) in the section of his written opinion quoted above, the ALJ erred unless he sufficiently discussed the evidence supporting his decision elsewhere in the opinion.  See Kennedy, 738 F.3d at 1178; Huecias v. Colvin, Case No. EDCV 14-1437-JEM, 2015 WL 1005410, at *25 (C.D. Cal. Mar. 6, 2015) (finding that the ALJ substantiated his step three finding, where "[t]he ALJ thoroughly discussed all of the relevant medical evidence of record bearing on Listing 1.04 elsewhere in the decision.").

Following his step three determination, the ALJ discussed some of the medical evidence relating to Plaintiff's cervical spine impairments in greater detail.  (See AR at 19-23.)  The Court will address each requirement of Listing 1.04(A) below.

### a. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain

Plaintiff contends that the record establishes compression of the spinal cord, citing the MRI of his cervical spine dated September 20, 2017, as evidence.  (J. Mot. at 15 (citing AR at 516–17).)  In his opinion, the ALJ discussed this MRI, specifically that it showed spinal cord compression, and the MRI of Plaintiff's lumbar spine which showed

"perhaps slight compression" of the right L5 nerve root, which is consistent with the medical record.  (See AR at 22, 516–19.)  Additionally, the ALJ stated that, at times, Plaintiff reported "back pain which went into his legs," numbness or tingling in his hands, and "neck pain going into his bilateral arms," (id. at 21), which is consistent with Plaintiff's reported symptoms of back, neck, and joint pain, and extremity numbness throughout the record.  (See e.g., id. at 500, 513, 542, 547.)  Therefore, the ALJ properly found the first criterion was satisfied.

### b.  Limitation of motion of the spine

Next, Plaintiff asserts that the record establishes reduced cervical range of motion, citing treatment notes indicating mild pain with range of motion and moderate pain with range of motion as evidence.  (J. Mot. at 15 (citing AR at 513, 558).)  The ALJ stated in his written opinion that Plaintiff experienced limited range of motion in the cervical and lumbar spine.  (Id. at 21–22.)  This finding is supported by physical examinations of Plaintiff with similar indications of limited range of motion of the spine, (id. at 389, 457, 462), but also normal range of motion at times, (id. at 466–68).  Plaintiff's pain ranged from mild, (id. at 513), to moderate, (id. at 558, 563, 568), to severe, (id. at 620), in relation to range of motion of the spine.  Therefore, the ALJ properly concluded the second criterion was satisfied.

### c.  Motor loss (atrophy with associated muscle weakness or muscle weakness)

Plaintiff further argues that the record indicates grip weakness, citing one treatment note of decreased bilateral hand strength and one treatment note of bilateral grip weakness.  (J. Mot. at 15 (citing AR at 548, 591).)  However, the medical record also includes findings by Dr. Nelson and Dr. Sabourin that Plaintiff had normal motor strength.  (Id. at 423–24, 466–68.)  The ALJ sufficiently addressed this criterion by finding that Plaintiff had normal motor strength.  (Id. at 22.)

/ / /

/ / /

1    **d.   Sensory or reflex loss**

2        Plaintiff argues that the record indicates sensory loss in the upper extremities,

3    citing treatment notes of extremity weakness and numbness in extremity as evidence.

4    (J. Mot. at 15 (citing 513, 558, 591).)  While Plaintiff did report numbness in his upper

5    extremities, (see e.g., id. at 513, 542, 547), those allegations are not corroborated by

6    any medical opinions.  The record includes Dr. Nelson's examination notes indicating

7    normal sensation in the bilateral lower extremities.  (Id. at 423–24.)  Therefore, The ALJ

8    sufficiently addressed this criterion by finding that Plaintiff had normal sensation and

9    reflexes.  (Id. at 221.)

10       **e.   Positive straight-leg raising test in both the (a) sitting and (b) supine**

11   **position**

12       Lastly, Plaintiff does not cite, nor does the Court find, any evidence of positive

13   straight-leg raising tests in both the sitting and supine positions.  (See J. Mot. at 14–15.)

14   Nevertheless, Dr. Adsit found that Plaintiff's "[s]upine straight leg raising is 40/50,

15   limited by pain on the right," (id. at 347), and the ALJ noted Plaintiff's "[s]traight leg

16   raise test showed increased back tightness," (id. at 21)  However, this does not

17   establish positive straight-leg raising tests in both the sitting and supine positions.

18   Given that the Plaintiff failed to provide evidence of this criterion, and it is not available

19   in the medical record, this last criterion is also not met.

20   **3.   Conclusion**

21       Having examined each requirement of Listing 1.04(A), the Court finds that Plaintiff

22   has not met his burden to show that he met all of the requirements of the listing for the

23   required twelve-month period.  Specifically, Plaintiff has not identified any medical

24   evidence of positive straight-leg raising tests in both the sitting and supine positions,

25   which alone is dispositive of Plaintiff's claim that he meets the criteria of Listing 1.04(A).

26   Additionally, while Plaintiff points to some evidence of motor loss and sensory loss,

27   there is additional evidence in the record that Plaintiff had normal motor strength and

28   sensation which supports the ALJ's conclusion.  Despite Plaintiff's argument that he met

1   "most, if not all, of the requirements," (J. Mot. at 15), Plaintiff must demonstrate he met

2   or medically equaled <u>all</u> of the criteria of Listing 1.04(A), and he failed to do so here.

3   Accordingly, the ALJ did not err in his analysis and finding with respect to that listing.

4   <u>See</u> <u>Cattano v. Berryhill</u>, 686 F. App'x 408, 410 (9th Cir. 2017) (holding that plaintiff "did

5   not meet all of the requirements for Listing 1.04, for disorders of the spine, because he

6   [wa]s unable to point to evidence that he ha[d] suffered motor loss, sensory or reflex

7   loss, or positive straight-leg raising tests in the sitting and supine positions for twelve

8   continuous months"); <u>Yanchar v. Berryhill</u>, 720 F. App'x 367, 370 (9th Cir. 2017) (holding

9   that the claimant did not meet Listing 1.04 requirements because "the positive straight-

10   leg raising tests in the record do not specify whether she tested positive both sitting and

11   supine").

12   **C.**     **The ALJ Erred by Failing to Fulfill His Duty to Fully and Fairly Develop the Record**

13           Plaintiff asserts that the ALJ erred by failing to fulfill his duty to fully and fairly

14   develop the record.  (J. Mot. at 18–19.)  Specifically, Plaintiff contends that the record

15   does not contain a recent medical opinion assessing his functional limitations.  (<u>Id.</u> at

16   18.)  Plaintiff alleges that the most recent medical opinion, dated December 13, 2017,

17   was rendered without the benefit of reviewing Plaintiff's complete medical record,

18   including evidence of his spinal cord compression, April 2018 cervical spine surgery, and

19   neurological deficits.  (<u>Id.</u> at 18–19.)  Plaintiff thus argues that the medical source

20   opinions have little to no probative value, the ALJ should have ordered a consultative

21   examination or consulted with a medical expert at the administrative hearing, and this

22   failure to supplement the record constitutes harmful error.  (<u>Id.</u> at 19, 21.)

23           The Commissioner argues that the ALJ had no duty to order a consultative

24   examination or consult with a medical expert.  (<u>Id.</u> at 19–21.)  The Commissioner

25   contends that Plaintiff has not demonstrated an inadequacy or ambiguity in the record

26   to trigger the ALJ's duty to develop the record.  (<u>Id.</u> at 19.)  Specifically, the

27   Commissioner maintains that more than one physician reviewed evidence of Plaintiff's

28

20cv2277-LL(MSB)

1  spinal compression and neurological deficits, and concluded that Plaintiff is capable of

2  performing a light range of work.  (Id. at 20.)

3      ### 1.  Applicable law

4          In Social Security cases, the ALJ has a duty to develop the record fully and fairly,

5  and to assure that the claimant's interests are considered, and this special duty exists

6  even when the claimant is represented by counsel.  See Garcia v. Comm'r Soc. Sec., 768

7  F.3d 925, 930 (9th Cir. 2014); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

8  The ALJ "must be especially diligent in ensuring that favorable as well as unfavorable

9  facts and circumstances are elicited."  Garcia, 768 F.3d at 930 (quoting Celaya v. Halter,

10  332 F.3d 1177, 1183 (9th Cir. 2003)).  "[A]n ALJ's duty to develop the record further is

11  triggered only when there is ambiguous evidence or when the record is inadequate to

12  allow for proper evaluation of the evidence."  Agatucci v. Berryhill, 721 F. App'x 614, 617

13  (9th Cir. 2017) (quoting McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011)).

14      ### 2.  Analysis

15          The most recent medical opinions assessing Plaintiff's functional limitations pre-

16  date his spinal stenosis surgery.  (See AR at 56–67, 82–94.)  On October 4, 2017, at the

17  initial level of review, Dr. Rivera-Miya reviewed Plaintiff's medical records through 2017,

18  including an MRI of his spine dated May 12, 2014, and concluded that Plaintiff was not

19  disabled and was capable of light range of work.  (AR at 56–67.)  On December 13, 2017,

20  at the reconsideration level, Dr. Laiken reviewed Plaintiff's records through 2017,

21  including an MRI of Plaintiff's spine dated September 20, 2017, and the psychological

22  evaluation from January 2018.  (Id. at 82–94.)  Dr. Laiken also concluded that Plaintiff

23  was not disabled and was capable of light range of work.  (Id. at 93–94.)  Further, the

24  most recent medical opinion by a state agency examining physician is that of Dr.

25  Sabourin, dated November 16, 2015, who assessed Plaintiff's functional limitations.

26  (See id. at 465–69.)  The ALJ heavily relied on Dr. Sabourin's opinion in making his

27  disability determination.  (See id. at 23.)  Notably, Plaintiff's treating physicians at San

28

1   Ysidro Health Center are the only physicians who assessed Plaintiff post-surgery, and

2   they did not evaluate or opine as to Plaintiff's functional limitations.  (See id. at 546–74.)

3          The record establishes that Plaintiff had a major surgery after the most recent

4   examinations and state agency non-examining consultations.  At the reconsideration

5   level, Dr. Laiken noted that Plaintiff was "supposed to go into surgery for [his] neck and

6   back."  (Id. at 83.)  Additionally, Plaintiff's records from San Ysidro Health Center

7   indicate that his treating physicians examined him before and after the surgery.  (Id. at

8   546–74.)  Of particular importance, Plaintiff complained of severe pain post-surgery.

9   (Id. at 570, 573.)  Further, the ALJ inquired about the surgery records during the

10   administrative hearing and was advised that Plaintiff's counsel failed to provide those

11   records.  (Id. at 44–45.)  The ALJ, nevertheless, closed the record at the conclusion of the

12   administrative hearing.  (Id. at 45, 54.)

13          Despite this apparent inadequacy of the medical record, and after acknowledging

14   during the administrative hearing that surgery records were not included in Plaintiff's

15   medical records before the ALJ, the ALJ proceeded to make his disability determination

16   without any effort to supplement the record.  The ALJ had ample time to order another

17   consultative examination to consider Plaintiff's functional limitations after undergoing

18   such an invasive procedure.  From the time of Plaintiff's surgery in April 2018, seventeen

19   months passed before the administrative hearing, (see id. at 40), another two weeks

20   passed before the ALJ issued his written decision, (see id. at 25), and almost another

21   year passed before the Appeals Council upheld the ALJ's decision, (see id. at 1).  The ALJ

22   decided to close the record at the conclusion of the administrative hearing, (id. at 54),

23   and incorrectly determined that the record was sufficient to make a disability

24   determination.

25          The Court agrees with Plaintiff that the ALJ should have supplemented the record

26   and ordered a consultative examination or consulted with a medical expert at the

27   administrative hearing.  See 20 C.F.R. § 404.1545(a)(3) ("[W]e are responsible for

28   developing your complete medical history, including arranging for a consultative

1  examination(s) if necessary"); see also Sean M. v. Berryhill, Case No.: 3:18-cv-02272-GPC

2  (RNB), 2019 WL 2436539, at *3 (S.D. Cal. June 11, 2019) (finding that the ALJ's failure to

3  either follow up with plaintiff's treating physicians or order a consultative examination

4  violated the ALJ's special duty to fully and fairly develop the record, and "resulted in a

5  decision that was not supported by substantial evidence, but rather was based on pure

6  conjecture."); Watson v. Astrue, No. CV 07–5223–RC, 2008 WL 5246062, at *3 (C.D. Cal.

7  Dec. 12, 2018) (finding that the ALJ failed to fully and fairly develop the record by not

8  attempting to obtain plaintiff's recent medical records, including surgery records);

9  Holloman v. Astrue, No. CIV S–09–1400 EFB, 2010 WL 3618651, at *2, *4 (E.D. Cal. Sept.

10  13, 2010) (finding that the ALJ erred, where the ALJ "was made aware that medical

11  records documenting plaintiff's mental impairment existed, but failed to obtain those

12  records"); Hakchareum v. Barnhart, No. C–03–00557–SC, 2003 WL 22134857, at *3

13  (N.D. Cal. Sept. 9, 2003) ("where there is a substantial time delay between the

14  administrative ruling discontinuing benefits and the hearing before an ALJ, the ALJ has a

15  continuing duty to develop the record").  Notably, the ALJ's duty to develop the record

16  is not lessened by Plaintiff's failure to submit his surgery records.  See Holloman, 2010

17  WL 3618651, at *4 ("While it is true that it is the plaintiff's burden to prove his disability,

18  plaintiff's attorney's shortcomings do not excuse the ALJ from his duties.").

19        Based on the record before him, the ALJ could not properly make a disability

20  determination without an updated evaluation of Plaintiff's functional limitations post-

21  surgery, and the ALJ erred by failing to fully and fairly develop the record.  Additionally,

22  the Court cannot find that the ALJ's error "was inconsequential to the ultimate

23  nondisability determination" and therefore harmless.  See Carmickle v. Comm'r Soc. Sec.

24  Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

25  / / /

26  / / /

27  / / /

28  / / /

**D.    The ALJ Failed to Resolve an Apparent Conflict as to the Occupation of Cleaner, but Not as to the Occupations of Assembler and Material Distributor; Thus, the Error is Harmless**

Plaintiff contends that the ALJ failed to resolve an apparent inconsistency between the VE's testimony and the DOT.  (J. Mot. at 21–23.)  Plaintiff argues that the VE testified that an individual restricted to "occasional overhead reaching" could perform the duties of a cleaner, assembler, and material distributor, and the DOT describes these three occupations as requiring "frequent reaching."  (Id. at 21–22.) Plaintiff asserts that an individual with a restriction to "occasional overhead reaching," as testified by the VE, cannot perform duties that require "frequent reaching," as defined in the DOT.  (Id. at 23.)  Plaintiff further asserts that common experience suggests that the duties of a cleaner require reaching overhead, and the occupations of assembler and material distributor are sufficiently removed such that common experience cannot be relied upon to resolve the apparent conflict.  (Id. at 28.)  Plaintiff contends that the ALJ's acceptance of the VE's deviation from the DOT, without an explanation from the VE regarding the basis for the deviation, constitutes reversible error.  (Id. at 23, 28.)

The Commissioner argues that there is no actual or apparent conflict between the VE's testimony and the DOT; therefore, the ALJ was not required to elicit a further explanation from the VE.  (Id. at 22–27.)  The Commissioner asserts that the DOT does not address "reach[ing] overhead"; rather, the DOT addresses "reaching," which is defined as "extending the hands and arms in any direction."  (Id. at 24 (quoting SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).)  The Commissioner also contends that a job may require frequent reaching and only involve occasional overhead reaching.  (Id. at 25.) The Commissioner further alleges that overhead reaching is not "common" or "obvious part" of the duties of a cleaner, assembler, or material distributor.  (Id. at 26.)  Finally, the Commissioner maintains that even if there was an unresolved conflict between the DOT's description of the cleaner occupation and occasional overhead reaching

1   limitation, the other two occupations identified by the VE support the ALJ's step five

2   determination; thus, any error is harmless.  (Id. at 27.)

3       **1.   Applicable law**

4       At step five of the sequential evaluation process, "the Commissioner has the

5   burden 'to identify specific jobs existing in substantial numbers in the national economy

6   that [a] claimant can perform despite [his] identified limitations.'"  Zavalin v. Colvin, 778

7   F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.

8   1995)); see also 20 C.F.R. § 416.920(g).  In determining if other suitable work exists that

9   the claimant may be able to perform, the ALJ is to rely on the DOT, and may also rely on

10   the testimony of VEs who testify about specific occupations that a claimant can perform

11   in light of his or her RFC.  See Zavalin, 778 F.3d at 845–46; Valentine v. Comm'r Soc. Sec.

12   Admin., 574 F.3d 685, 689 (9th Cir. 2009).

13       An ALJ may not "rely on a vocational expert's testimony regarding the

14   requirements of a particular job without first inquiring whether the testimony conflicts

15   with the [DOT]."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007); see also SSR

16   00-4p, 2000 WL 1898704 (Dec. 4, 2000).  Pursuant to SSR 00-4p, the ALJ has an

17   affirmative duty to inquire into the existence of potential conflicts between the VE's

18   testimony and the DOT, and obtain an explanation from the VE regarding any conflicts

19   that do exist.  See SSR 00-4p, 2000 WL 1898704; Rounds v. Comm'r Soc. Sec. Admin.,

20   807 F.3d 996, 1003 (9th Cir. 2015); Massachi, 486 F.3d at 1152–53.  If there is conflict

21   between the VE's testimony and the DOT, "the ALJ must then determine whether the

22   vocational expert's explanation for the conflict is reasonable and whether a basis exists

23   for relying on the expert rather than the DOT."  Massachi, 486 F.3d at 1153.  Failure to

24   conduct such inquiry is analyzed under the harmless error standard.  See Zavalin, 778

25   F.3d at 848; see also Massachi, 486 F.3d at 1154 n.19 (stating that the error is harmless

26   where "there [is] no conflict, or if the vocational expert ha[s] provided sufficient support

27   for her conclusion so as to justify any potential conflicts.").

28

A conflict exists where the difference between the VE's testimony that a person with claimant's limitations could perform certain jobs and the DOT's requirements for the identified jobs is "obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 807–08 (9th Cir. 2016); Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017). A conflict is "obvious or apparent" when the VE's testimony is at odds with "essential, integral, or expected" requirements of the occupation identified by the VE. Gutierrez, 844 F.3d at 808; Lamear, 865 F.3d at 1205. The VE's testimony does not conflict with the DOT if the "frequency or necessity of a task is unlikely and unforeseeable." Gutierrez, 865 F.3d at 1205. The ALJ's obligation to inquire further is fact-dependent, and "the more obscure the job, the less likely common experience will dictate the result." Lamear, 865 F.3d at 1205. Ordinarily, the ALJ should ask the VE to explain why there is no conflict between the DOT and the applicant's RFC. Id.

### 2. Analysis

The ALJ found that Plaintiff has the RFC to "occasionally reach overhead bilaterally." (AR at 20.) The VE categorized Plaintiff's past relevant work as follows: "Shipyard Laborer, Dictionary of Occupational Titles (DOT) code 809.687-022, heavy exertional level, unskilled, specific vocational preparation (SVP2)." (Id. at 23; see also id. at 51.) The ALJ found that, "[b]ased on the claimant's documented vocational background, the claimant's testimony, and the testimony of the vocational expert . . . given [claimant's] residual functional capacity, the claimant could not perform his past relevant work as actually or generally performed." (Id. at 23–24.)

During the administrative hearing, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, whose "reaching overhead is limited to occasional bilaterally." (Id. at 52.) The VE testified that such an individual could perform the work of a cleaner (DOT 323.687-014), an assembler (DOT 706.684-022), and a material distributor (DOT 230.687-010). (Id.) At the conclusion of the VE's testimony, the ALJ inquired as to whether the VE's testimony was "consistent with the DOT and Selected Characteristics of Occupations," and the VE responded in the

1    affirmative.  (Id. at 53.)  Relying on the VE's testimony regarding the availability of work

2    in significant numbers that accorded with Plaintiff's RFC, the ALJ determined that

3    Plaintiff would be able to perform the duties of a cleaner (DOT 323.687-014), an

4    assembler (DOT 706.684-022), and a material distributor (DOT 230.687-010).  (Id. at 24–

5    25.)  The ALJ stated in his written opinion that he had "determined that the vocational

6    expert's testimony is consistent with the information contained in the Dictionary of

7    Occupational Titles."  (Id. at 25.)

8         According to the DOT, the occupations of a cleaner, assembler, and material

9    distributor require "frequent reaching."  See DOT 323.687-014, 1991 WL 672783; DOT

10   706.684-022, 1991 WL 679050; DOT 230.687-010, 1991 WL 672162.  "Frequent" is

11   defined as "occurring from one-third to two-thirds of the time," and "occasional" means

12   "occurring from very little up to one-third of the time," but not "more than about 2

13   hours of an 8-hour workday."  SSR 83–10, 1983 WL 31251, at *5 (Jan. 1, 1983).  Further,

14   "reaching" is defined as "the ability to extend one's hands and arms 'in any direction.'"

15   Gutierrez, 844 F.3d at 808 (quoting SSR 85-15, 1985 WL 56857).  However, the DOT does

16   not distinguish between different types of reaching, nor does it specify the required

17   frequency of different types of reaching in different occupations.

18        Notably, not every occupation that requires frequent reaching requires the ability

19   to reach overhead.  See id.  The inquiry is fact-dependent, and involves assessing the

20   DOT's definition of the occupation and drawing on common experience to determine

21   whether the occupation requires more than "occasional overhead reaching."  See id.;

22   Lamear, 865 F.3d at 1205.  Gutierrez is demonstrative of this point.  844 F.3d 804.  In

23   Gutierrez, the claimant was unable to lift her right arm above her shoulder or lift more

24   than five pounds with that arm.  Id. at 807.  The VE testified that the claimant could

25   work as a cashier.  Id.  Relying on common experience, given the public's familiarity with

26   the duties of cashiers, the appellate court found there was no conflict between the

27   DOT's definition and the VE's testimony, because cashiering does not require overhead

28   reaching.  Id. at 808–09.  Thus, the ALJ was not required to inquire further.  Id. at 809.

Plaintiff, citing <u>Lamear</u> in support of his position, asserts that a limitation to "occasional overhead reaching" and a requirement of "frequent reaching" are always in conflict.  (J. Mot. at 21 (citing <u>Lamear</u>, 865 F.3d at 1203–05).)  Plaintiff's argument is unavailing.  <u>See</u> <u>e.g.</u>, <u>Gutierrez</u>, 844 F.3d at 808.  In <u>Lamear</u>, the claimant was limited to "reach[ing] overhead with his left upper extremity," and the VE testified that the claimant could perform the occupations of an office helper, mail clerk, or parking lot cashier.  865 F.3d at 1204.  After considering the DOT and common experience, the appellate court held that the claimant's RFC limitation was in conflict with a limitation involving frequent reaching with <u>both hands</u> to perform the necessary parts of the occupations identified.  <u>Id.</u> at 1205.  Therefore, the ALJ was required to inquire further to reconcile the conflict.  <u>Id.</u> at 1206.

Based on a review of the DOT's definition, and drawing on common experience, there is an obvious and apparent conflict between the requirement of "frequent reaching" and Plaintiff's RFC limitation to "occasional overhead reaching bilaterally" as it pertains to the occupation of a cleaner.  The DOT provides, in relevant part, that the duties of a cleaner are as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens.  Makes beds.  Replenishes supplies, such as drinking glasses and writing supplies.  Checks wraps and renders personal assistance to patrons.  Moves furniture, hangs drapes, and rolls carpets.

DOT 323.687-014, 1991 WL 672783.

The duty to hang drapes suggests that overhead reaching is a requirement of the cleaner occupation.  Further, the duty to replenish supplies likely and foreseeably may involve reaching overhead, because a cleaner may need to obtain supplies from overhead or restock supplies on a raised shelf.  <u>See</u> <u>Stainthorp v. Berryhill</u>, No. 1:17-cv-00934-GSA, 2018 WL 5619737, at *7 (E.D. Cal. Oct. 26, 2018) ("the necessity of reaching overhead when cleaning a room is likely and foreseeable involving such activities as

placing linens and other items in overhead storage, and overhead dusting and cleaning of raised furniture, fixtures, mirrors and windows.").  Additionally, common experience suggests that cleaning requires more than occasional reaching overhead.  An average person is familiar with the job of a cleaner, like with the job of a cashier, because the duties are observed in everyday life.  See Gutierrez, 844 F.3d at 808–09.  Therefore, based on the DOT's definition of the cleaner occupation, and drawing from common experience, an apparent conflict exists because this occupation requires more than occasional overhead reaching, thereby imposing an obligation on the ALJ to inquire further to resolve this conflict.  See Stainthorp, 2018 WL 5619737, at *7 (concluding that a VE's testimony that "a claimant limited to occasional overhead reaching is capable of working as a housekeeping cleaner is inconsistent with the DOT and required the ALJ to inquire further"); Rahn v. Berryhill, No. 2:17-cv-02491-JDE, 2018 WL 1054299, at *3 (C.D. Cal. Feb. 23, 2018) (finding that a limitation to occasional bilateral overhead reaching "is at odds with the DOT descriptions and what common experience would dictate the work of a . . . hotel housekeeper would require").

By first assessing the DOT's definitions, the assembler and material distributor occupations do not involve any listed duties that require overhead reaching.  The DOT provides that the duties of an assembler are as follows:

Although the ALJ erred by not conducting a further inquiry to resolve the conflict between the VE's testimony and the DOT with respect to the cleaner occupation, the error is harmless because the two other occupations the VE identified support the ALJ's step five determination.  Rounds, 807 F.3d at 1007 (9th Cir. 2017) (quoting Molina, 674 F.3d at 1115) ("[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'").

By first assessing the DOT's definitions, the assembler and material distributor occupations do not involve any listed duties that require overhead reaching.  The DOT provides that the duties of an assembler are as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs.  Bolts, screws,

clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools.  Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.  Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.  May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor.  May be known according to product assembled.

DOT 706.684-022, 1991 WL 679050.  Further, the DOT describes the following duties of a material distributor:

Distributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists.

DOT 230.687-010, 1991 WL 672162.

While the assembler and material distributor occupations appear to involve frequent reaching, either to handle parts on an assembly line or to hand out advertisements, neither suggest any action that requires reaching overhead.  See Alacron v. Astrue, No. 12-CV-1719-IEG (MDD), 2013 WL 1315968, at *4 (S.D. Cal. Mar. 28, 2013) ("the VE's testimony that [p]laintiff, despite her inability to reach above her shoulder, is able to perform the job of assembler, is not in conflict with the DOT's more general description of this job"); Rahn, 2018 WL 1054299, at *4 (finding "no obvious or apparent conflict between the VE's testimony and the DOT's description of the occupation of advertising-material distributor with respect to reaching" because "advertising-material distributors appear even less likely to be required to reach overhead than cashiers.").  Further, the Court cannot rely on common experience to find that more than occasional overhead reaching is involved because the duties of an assembler and a material distributor are not commonly known to the public.  See Jalos

35

1 | v. Berryhill, Case No. EDCV 17-01363-AFM, 2018 WL 2276637, at *7 (C.D. Cal. May 16,

2 | 2018) (finding that "the jobs of assembler of plastic hospital products and toy assembler

3 | are too far removed from common experience"); Masterson v. Berryhill, Case No.: 3:16-

4 | cv-01300-GPC-WVG, 2017 WL 3575525, at *4 (S.D. Cal. Aug. 18, 2017) (finding that a

5 | small parts assembler position is not so commonplace that a court can rely on common

6 | experience).

7 |    The Court therefore finds that the ALJ erred by failing to identify and reconcile the

8 | apparent conflict between the VE's testimony and the requirements listed in the DOT as

9 | to the cleaner occupation.  The Court further finds that the error was harmless because

10 | there was no conflict between the VE's testimony and the DOT's requirements with

11 | regard to the assembler and material distributor occupations identified by the VE.

12 | **VI.  CONCLUSION AND RECOMMENDATION**

13 |    The reviewing court may enter a "judgment affirming, modifying, or reversing"

14 | the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand

15 | the case to the Social Security Administration for further proceedings.  Id.  The reviewing

16 | court has discretion in determining whether to remand for further proceedings or award

17 | benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

18 | 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where

19 | additional administrative proceedings could remedy defects in the decision.  See Kail v.

20 | Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is

21 | appropriate where no useful purpose would be served by further administrative

22 | proceedings, where the record has been fully developed, or where remand would

23 | unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See

24 | Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d

25 | 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

26 |    In this case, Plaintiff requests that "this case be remanded for an immediate

27 | award of benefits."  (J. Mot. at 28.)  In the alternative, Plaintiff "requests that this case

28 | be remanded to the Commissioner for further proceedings, pursuant to Sentence Four

of 42 U.S.C. § 405(g)." (Id.)  Defendant asks the Court to affirm the Commissioner's final decision, or "if the Court finds otherwise . . . remand for further proceedings." (Id. at 28–29.)  The Court has concluded that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.  Specifically, the Court **RECOMMENDS** that, upon remand, Plaintiff's subjective pain and physical dysfunction testimony be reexamined, consistent with this Report and Recommendation, and the required clear and convincing standard.  The Court further **RECOMMENDS** that, upon remand, Plaintiff's medical record be supplemented, as outlined in this Report and Recommendation.

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **July 22, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 29, 2022**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  July 11, 2022

Honorable Michael S. Berg
United States Magistrate Judge

20cv2277-LL(MSB)